IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 03-74-BLG-SPW |
| Plaintiff/Respondent, | CV 16-88-BLG-SPW |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| DANA CANFIELD, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant Canfield's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Canfield is a federal prisoner proceeding with counsel.

## I. Procedural Background

Canfield was charged in May 2003 with committing nine casino robberies in Billings, Montana, between March and July 2002. Another person, co-defendant Marion Hungerford, "cased" the casinos and reported to Canfield where the money and the workers were. Canfield then went in to each casino with a gun, pointed it at employees, and demanded money.

Each robbery was charged under the Hobbs Act, 18 U.S.C. § 1951(a). Canfield was charged with nine separate counts under 18 U.S.C. § 924(c)(1)(A) as to each robbery. Hungerford, too, was named in each § 924(c) count as an aider

1

and abettor. Canfield was also charged with two counts of possessing a firearm while subject to an order of protection, violations of 18 U.S.C. § 922(g)(8)(B). *See* Superseding Indictment (Doc. 49).

A sentence under § 924(c) must run consecutive to any other sentence; further, the first sentence under § 924(c) carries a mandatory five-year penalty, but every § 924(c) conviction thereafter carries another mandatory and consecutive 25 years. Therefore, under the superseding indictment, if convicted on all the § 924(c) counts, each defendant faced a mandatory minimum sentence of 2,460 months, or 205 years, consecutive to any guideline sentence for the robberies. *See* 18 U.S.C. § 924(c)(1)(A), (D)(ii).

On March 5, 2004, Canfield pled guilty to two counts of using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), Counts 9 and 19 of the Superseding Indictment. The "crime of violence" underlying Count 9 was the robbery at the Jackpot Casino on May 6, 2002 (Count 8). The "crime of violence" underlying Count 19 was the robbery at the Joker's Wild Casino on July 27, 2002 (Count 18). *See* Superseding Indictment (Doc. 49) at 4, 7-8; Plea Agreement (Doc. 81) at 2-3 ¶ 6.

On December 16, 2004, Canfield was sentenced to serve seven years in prison on Count 9 and a consecutive 25-year term on Count 19, for a total term of 32 years, or 384 months, in prison. Minutes (Doc. 137); Judgment (Doc. 138) at 2-

3; 18 U.S.C. § 924(c)(1)(A)(ii).  Canfield did not appeal.  His sentence was later reduced to 240 months.  *See* Order (Doc. 211).

Canfield now seeks relief under the United States Supreme Court's recent decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015).

## II. Merits

Everyone would agree that Canfield used a firearm as a weapon in committing a crime.  But that does not necessarily mean he is guilty of using or carrying a firearm during and in relation to a "crime of violence" within the meaning of 18 U.S.C. § 924(c).

### A. "Crime of Violence"

Congress penalizes those who use a firearm to commit federal drug trafficking crimes and federal crimes of violence.  Pursuant to 18 USC §924(c)(1)(A), a person who does the following will be penalized:

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]

Drug trafficking is not at issue here.  The question is whether Canfield used or carried a firearm in connection with a "crime of violence."  Congress defines the term as follows:

> For purposes of this subsection [§ 924(c)] the term "crime of violence" means an offense that is a felony and—

3

(A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

A person who trades a firearm for advice on how to commit tax fraud arguably uses the firearm during and in relation to tax fraud, or at least possesses the firearm in furtherance of tax fraud. *Cf. Watson v. United States*, 552 U.S. 74, 76 (2007); *Smith v. United States*, 508 U.S. 223, 241 (1993). But § 924(c) could not apply to that person, because tax fraud is not a "crime of violence"—that is, it does not have force as an element, and it does not "by its nature" involve a substantial risk that force will be used.

A person who uses a firearm to extort advice on how to commit tax fraud is at least threatening to use violence, and might even use violence, during and in relation to the crime of tax fraud. It would be reasonable to authorize punishment for using a firearm in that manner. Congress once did so. *See* Omnibus Crime Control Act of 1970, Pub. L. No. 91-644, tit. II, § 13, 84 Stat. 1889, 1890 (Jan. 2, 1971) (authorizing additional one- to ten-year penalty for using a firearm to commit or unlawfully carrying a firearm during commission of "any felony" prosecutable in court of the United States); Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005(a), 98 Stat. 1837, 2138-39 (Oct. 12, 1984)

4

(replacing former § 924(c) with provision imposing five-year sentence for using or carrying a firearm during and in relation to a crime of violence); *see also* Firearms Owners' Protection Act, Pub. L. No. 99-308, § 104(a)(2)(F), 100 Stat. 449 (May 19, 1986) (enacting definition of "crime of violence" currently found in § 924(c)(3)).

But Congress does not do so now. Since 1984, Congress has limited the instances in which a person can be punished for using or carrying a firearm in criminal activity. Section 924(c) could not apply to a person who uses a firearm to extort tax fraud advice, because tax fraud does not meet Congress's definition of a crime of violence.

## B. Categorical Approach

The key characteristic of Congress's definition of a "crime of violence" is that it applies to categories of crimes, not to the circumstances in which an individual defendant uses or carries or possesses a firearm. Necessarily so, using a firearm as a weapon to commit a crime would make *any* crime a violent one. But if that was what Congress intended, the phrase "crime of violence" would be superfluous.

Congress uses the identical phrase, "crime of violence," elsewhere in Title 18, *see* § 16. It uses a similar phrase, "violent felony," elsewhere in § 924, at subsection 924(e)(2)(B). As to both § 924(e)(2)(B) and § 16, courts use a

5

"categorical approach" to decide whether a given crime fits Congress' definition. This approach looks "only to the statutory definitions" of the crime, "not to the particular facts underlying" an individual defendant's commission of the crime. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also United States v. Sherbondy*, 865 F.2d 996, 1009-10 (9th Cir. 1988) (holding that district court may look only "to the statutes establishing the crimes," not "the individual defendant's specific conduct in committing the . . . offense."), *cited in Taylor*, 495 U.S. at 600.

The Ninth Circuit has long required courts use the categorical approach to interpret § 924(c)(3) just as they interpret § 924(e)(2)(B) and § 16. *See United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016); *United States v. Amparo*, 68 F.3d 1222, 1224-26 (9th Cir. 1995). Section 924(c) only penalizes those who use a firearm to commit *some* crimes. For the penalty to apply, the predicate crime to a § 924(c) conviction must *always* be a "crime of violence," regardless of how a particular defendant might commit the crime, and regardless of whether a firearm is used or carried or possessed in furtherance of it. "A crime cannot categorically be a 'crime of violence' if the statute of conviction punishes any conduct not encompassed by the statutory definition of a 'crime of violence.'" *Benally*, 843 F.3d at 352.

The next question is whether Canfield's violation of the Hobbs Act was a "crime of violence," either because it "has as an element the use, attempted use, or

threatened use of physical force against the person or property of another," or because, "by its nature, [it] involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). To answer this question, the Court must use the categorical approach.

### C. Robbery or Extortion?

Canfield's case differs from that of many others litigated in this District under *Johnson*. He argues that Hobbs Act robbery is not a crime of violence under § 924(c)(3)(A). He also points to Hobbs Act extortion cases to show that some offenses prosecuted under the Act are non-violent. The United States' amended answer invites the Court to review the indictment and plea agreement to establish that Canfield was convicted of Hobbs Act robbery. *See* Am. Answer (Doc. 291) at 25-26; *see generally Shepard v. United States*, 544 U.S. 13 (2005).

The Indictment alleged that Canfield committed "robbery" and took property from each business "against its will by means of actual and threatened force, violence and fear of injury." *See* Superseding Indictment (Doc. 49) at 7 (Count 8), 11 (Count 18). These are unambiguous allegations using the words of the Hobbs Act's definition of robbery. *See* 18 U.S.C. § 1951(b)(1).

The Plea Agreement presented different elements. It said:

[Canfield] further acknowledges that these are the elements of the crime charged in Counts IX and XIX of the Superseding Indictment:

7

8.65 – Use of Firearm During a Crime of Violence

First, the defendant committed a crime of violence, that is, interfering with commerce by threats or violence (i.e., robbery of the Jackpot Casino in Billings, MT and the Joker's Wild Casino, Butte, MT);

Second, the defendant knowingly used or carried a firearm; that is, a Ruger new model single six .22 caliber revolver, Serial Number 26189809

Third, the defendant used or carried the firearm during and in relation to the crime.

8.117 – Hobbs Act

First, the defendant *induced the victim to part with property by the wrongful use of threat of force or fear*;

Second, the defendant acted with the intent to obtain the property that the defendant knew he was not entitled to receive;

Third, commerce from one state to another was affected in some way.

Plea Agreement (Doc. 81) at 4-5 ¶ 8 (emphasis added); *see also* 9th Cir. Manual of Model Crim. Jury Instr. (Crim.) 8.117 (approved 2000); *Nijhawan v. Holder*, 557 U.S. 29, 33-34 (2009) (distinguishing generic crime of "fraud" from the defendant's conduct on a specific occasion, "say, *the* fraud that the defendant planned and executed last month.") (emphasis in original).

Inducing a victim to part with property by wrongfully using threat of force or fear is *extortion* under the Hobbs Act: "the obtaining of property from another,

with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). A Hobbs Act *robbery*, by contrast, is "the unlawful taking or obtaining of personal property *from the person or in the presence of another*, against his will, by means of *actual or threatened force, or violence, or fear of injury*, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1).

Courts (including this one) have held that Hobbs Act robbery is a crime of violence under § 924(c)(3)(A). Force, violence, and fear of injury all reflect "the use, attempted use, or threated use of physical force against the person or property of another." *See, e.g.*, *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) ("Robbery indisputably qualifies as a crime of violence.").

Like robbery, extortion *may* be proved by "wrongful use of actual or threatened force [or] violence." But it may also be proved by the wrongful use of "fear." As Canfield points out, *see* Mot. § 2255 (Doc. 288) at 15-16, the word "fear" brings non-violent blackmail and economic extortion within the scope of the Hobbs Act. *See, e.g.*, *United States v. Villalobos*, 748 F.2d 953, 955, 956-57 (9th Cir. 2014) (finding Hobbs Act extortion where defendant threatened or offered to mislead authorities investigating an offense); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1130-33 (9th Cir. 2014) (applying *United States v. Sturm*, 870 F.2d 769, 771-72 (1st Cir. 1989), and finding Hobbs Act extortion would be proved if defendant

made wrongful threats of economic injury).

The elements recited in Canfield's plea agreement omit the phrase "with his consent." "[T]his element of consent is the razor's edge that distinguishes extortion from robbery." *United States v. Zhou*, 428 F.3d 361, 371 (2d Cir. 2005). But the recited elements also omit the phrase "against his will," the other side of the razor's edge distinguishing robbery from extortion. The plea agreement uses the word "wrongful," which plays a crucial role in distinguishing legal from illegal inducements in extortion, *see, e.g.*, *Levitt*, 765 F.3d at 1130, rather than the word "unlawful" in the definition of robbery. And the plea agreement describes the predicate "crime of violence" as "interfering with commerce by threats or violence." That is the title of the Hobbs Act, encompassing both robbery and extortion. *See* 18 U.S.C. § 1951.

No reasonable person would say Canfield blackmailed the casino employees. But, in categorical analysis, "[h]ow a given defendant actually perpetrated the crime makes no difference." *Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 2251 (2016). Only elements matter. The *Shepard* documents do not establish that Canfield pled guilty to the elements of robbery. They establish that he pled guilty to robbery *or extortion* in violation of the Hobbs Act.[1]

---

[1] Plea agreements underlying other *Johnson* motions filed in this Court described the elements of Hobbs Act robbery in terms similar to Canfield's case. But, on the whole, the *Shepard* documents in those cases fairly established that the underlying "crime of violence" was

### D. The Elements Clause, § 924(c)(3)(A)

Even if a Hobbs Act robbery is a crime of violence under § 924(c)(3)(A),

*Levitt* and *Villalobos* show that extortion does not have, as an element, the use or

attempted or threatened use of physical force against the person or property of

another. Canfield's pleas to Counts 9 and 19 did not establish that he committed a

crime of violence as defined by § 924(c)(3)(A).

### E. The Residual Clause, § 924(c)(3)(B)

Extortion arguably could be a "crime of violence" under the residual clause

of § 924(c)(3)(B). Elsewhere in § 924, Congress signaled that it considered

extortion a "violent felony." *See* Armed Career Criminal Act ("ACCA"), 18

U.S.C. § 924(e)(2)(B)(ii) (defining a "violent felony" as, among other things,

"burglary, arson, or extortion").

This is where Canfield's reliance on *Johnson* comes in. *Johnson* concerned

ACCA's last clause, commonly called the residual clause of § 924(e)(2)(B). It

held that the phrase "*otherwise involves conduct that presents a serious potential*

---

Hobbs Act robbery. *See, e.g.*, Plea Agreement (Doc. 42) at 5 ¶ 8, *United States v. Jordan Adams*, No. CR 08-14-BLG-SPW (D. Mont. Nov. 24, 2008); Plea Agreement (Doc.47) at 5-6 ¶ 8, *United States v. Chachanko*, No. CR 05-52-BLG-SPW (D. Mont. Dec. 2, 2005); Plea Agreement (Doc. 25) at 4-5 ¶ 8, *United States v. Perez*, No. CR 06-26-BLG-SPW (D. Mont. July 3, 2006). In another case, the defendant pled guilty only to a charge under § 924(c). The elements of the underlying "crime of violence" were described simply as "robbery affecting interstate commerce as charged in Count 1." And Count 1 of the indictment used the words of the Hobbs Act's definition of robbery. *See* Plea Agreement (Doc. 20) at 3 ¶ 4, *United States v. Wright*, No. CR 11-17-M-DWM (D. Mont. June 30, 2011).

*risk of physical injury to another*" was unconstitutionally vague. *See Johnson*, 135 S. Ct. at 2557.

18 U.S.C. § 16(b) is a similar though not identical clause to § 924(c)(3)(B). Section 16(b) defines a "crime of violence" as a felony "that, *by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*" On April 17, 2018, the United States Supreme Court affirmed the Ninth Circuit Court of Appeals in holding that the residual clause of § 16(b) is unconstitutionally vague under the rule of *Johnson. See Sessions v. Dimaya*, No. 15-1498, slip op. at 24-25 (U.S. Apr. 17, 2018).

Even after *Dimaya*, § 924(c)(3)(B) might not necessarily be unconstitutionally vague, but it is in the Ninth Circuit. *Mendez* and *Benally* hold that § 924(c)(3)(B) is applied by using categorical analysis, and that method lies at the heart of *Johnson* and *Dimaya*. As the Supreme Court succinctly explained in *Welch v. United States*, __ U.S. __, 136 S. Ct. 1257 (2016), *Johnson* held that § 924(e)(2)(B)(ii) "failed not because it adopted a 'serious potential risk' standard but because applying that standard *under the categorical approach* required courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Id.* at 1262 (emphasis added). Acknowledging that some crimes might be "clearly risky," the Court nevertheless held the clause unconstitutionally vague and

unenforceable in any case. *See Johnson*, 135 S. Ct. at 2560-61.

Likewise, in *Dimaya*, the Supreme Court said:

> [Section] 16(b) has the same two features that conspired to make ACCA's residual clause unconstitutionally vague. It too requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk. The result is that § 16(b) produces, just as ACCA's residual clause did, more unpredictability and arbitrariness than the Due Process Clause tolerates.

*Dimaya*, No. 15-1498, slip op. at 11 (U.S. Apr. 17, 2018) (internal quotation marks, brackets, and citations omitted).

This Court is not able to imagine how § 924(c)(3)(B), textually identical to § 16(b) and also applied by using categorical analysis, could be salvaged. At least in the Ninth Circuit at this time, it is unconstitutionally vague.

## F. Conclusion

Canfield pled guilty to robbery or extortion in violation of the Hobbs Act. Although Hobbs Act robbery is a crime of violence under § 924(c)(3)(A), extortion is not. Section 924(c)(3)(B) is unconstitutionally vague. As a result, Canfield's two convictions under § 924(c) are no longer valid under controlling law.

## III. Procedural Defenses

Unless one or the other of the United States' two procedural defenses prevails, Canfield is entitled to relief.

### A. Statute of Limitations

13

The statute of limitations, 28 U.S.C. § 2255(f), provides:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1)     the date on which the judgment of conviction becomes final; [or]

. . .

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

The United States argues that *Johnson* did not mention § 924(c) and, as a result, Canfield cannot identify a "right" the Supreme Court has recognized as applicable in his case. *See* Answer (Doc. 291) at 4-5. In sum, the United States claims Canfield's motion is too late under § 2255(f)(1) and, if anything, premature under § 2255(f)(3).

For four reasons, the Court disagrees with this interpretation.

### 1. Narrow Scope of the "Right"

First, the United States suggests *Johnson* announces only "a defendant's right not to have his sentence increased under the residual clause of the ACCA," as the Tenth Circuit recently put it. *See United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018) (holding that *Johnson* did not make timely under § 2255(f)(3) a § 2255 motion seeking relief against sentence imposed under mandatory Guidelines scheme).

But § 2255 does not say anything requiring a federal court to define "the right asserted" so narrowly. It is just as accurate to say that *Johnson* announced a right not to be penalized under a clause that is applied by categorical analysis and "ha[s] both an ordinary-case requirement and an ill-defined risk threshold." *See Dimaya*, No. 15-1498, slip op. at 24. *Dimaya* confirms the latter characterization of the "right" established by *Johnson*. In that case, the Supreme Court said, "*Johnson* is a straightforward decision, with equally straightforward application here," and "tells us how to resolve this case" under § 16(b) of Title 18. *Dimaya*, No. 15-1498, slip op. at 6, 24. If the right recognized in *Johnson* were confined to ACCA, *Dimaya* would not have been decided as it was.

### 2. Delay

Second, the United States suggests Canfield must wait to file until the Supreme Court decides a case under § 924(c). But, as Chief Justice Roberts pointed out in his dissent in *Dimaya*, the language of § 16(b) is incorporated or repeated in numerous places in the U.S. Code, "including provisions concerning racketeering, money laundering, domestic violence, using a child to commit a violent crime, and distributing information about the making or use of explosives," as well as § 924(c). *See Dimaya*, No. 15-1498, slip op. at 14-15 (Roberts, Ch. J., dissenting). The United States' argument would seem to require the Supreme Court to decide whether the "right" in *Johnson* applies to each statute *before* a

federal defendant could file a § 2255 motion.

Congress intended the statute of limitations "to eliminate delays in the federal habeas review process," *Holland v. Florida*, 560 U.S. 631, 648 (2010), not to create them. Requiring people who "assert" that *Johnson* gives them a right to relief to file within a year of *Johnson*'s issuance serves Congress's purpose much better. Anyone who asserts that a later case applying *Johnson* confers a right to relief—say, *Dimaya*, or a case specifically addressing § 924(c)—is unlikely to receive the benefit of § 2255(f)(3), because the Court "initially recognized" the "right asserted" in *Johnson*, not in *Dimaya* or a later case.

### 3. Redundancy

Third, the United States' argument needlessly entangles the question of when to file with the decision as to whether the movant actually has the right he asserts: If the filing is timely, it is meritorious; if it lacks merit, it is untimely. This leaves the limitations period with no work to do. Statutes of limitation are not generally redundant with the merits of a claim in this way.[2]

The other provisions of the limitations period, § 2255(f)(1), (2), and (4), are independent of the merits of the claim presented. By simply reading § 2255(f)(3) to require a defendant asserting a new right to relief to file within a year of the

---

[2] On the other hand, a motion that lacks merit might still be timely if equitable tolling applies or, in the case of a state prisoner, if statutory tolling applies. *See* 28 U.S.C. § 2244(d)(1)(C), (d)(2). So the "new right" limitations period would be worse than redundant.

Supreme Court's initial decision recognizing the right, § 2255(f)(3) is as easy to apply and as independent of the merits as the other subsections of the limitations period.

### 4. Section 2255(f) vs. Section 2254(d)

Finally, the United States' interpretation seeks to turn a timeliness provision into a restriction on federal courts' responsibility to say what the law is in federal criminal cases on collateral review. Some courts have found that § 2255(f)(3) imports *Teague v. Lane*, 489 U.S. 288 (1989)—which had nothing to do with a statute of limitations—into one subsection of the statute of limitations that now applies to federal prisoners filing § 2255 motions. *See, e.g.*, *Greer*, 881 F.3d at 1246-47.

Section 2255 imposes several restrictions, but it does not go as far as these courts have held. Section 2255(f)(3) *does* limit federal prisoners to asserting new rights that are recognized by the Supreme Court, as opposed to new rights recognized by federal appellate courts or conferred by federal statutes or rules. A provision restricting second or successive motions, § 2255(h)(2), *does* limit federal courts' authority to hear successive motions that are based on new constitutional rules, but it simply requires the Supreme Court to recognize the rule and also say it is retroactive. Section 2255(h) does not say anything that restricts the scope or application of a new constitutional rule.

If Congress wanted to restrict federal courts' authority to award collateral relief to federal prisoners, it knew how to do it. It *did* curtail federal courts' authority to award federal habeas relief to *state* prisoners. 28 U.S.C. § 2254(d)(1) provides that an application for federal habeas relief "shall not be granted unless" the state courts' decision of the claim was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States."

To do the same thing in § 2255, where rights newly recognized by the Supreme Court are concerned, Congress would have said something very simple, for instance, "A motion based on a newly recognized right shall not be granted unless the movant's right to relief is clearly established by the Supreme Court of the United States." As Congress did not say that, § 2255 does not limit collateral relief for federal prisoners to cases where relief is dictated by precedents of the Supreme Court.

### 5. Conclusion

Canfield asserts that *Johnson* gives him a right to relief. He filed within one year of the date the Supreme Court decided *Johnson*. His § 2255 motion is timely under § 2255(f)(3).

### B. Procedural Default

The United States also asserts that Canfield's motion is procedurally

defaulted because he did not challenge his conviction under 18 U.S.C. § 924(c) on direct appeal. *See* Answer at 5-8. Canfield's guilty plea precluded an appeal. Whether the default arose from the plea or the failure to appeal, a procedural default plainly exists. *See* Order (Doc. 293) at 3. Canfield asserts the default is excused by cause and by his actual innocence of violating § 924(c).

The parties have submitted briefs (Docs. 296, 297) to explain how the Court should assess whether Canfield was prejudiced by his two convictions and sentences under § 924(c). As they point out, it is not entirely clear how courts determine whether the United States "has forgone more serious charges in the course of plea bargaining." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

But there is no need to decide that issue. The fundamental question is whether the defendant suffered "actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc).

Without the plea agreement, on § 924(c) counts alone, Canfield faced a potential sentence of 2,460 months, or 205 years, consecutive to any guideline sentence for the robberies. *See* 18 U.S.C. § 924(c)(1)(A), (D)(ii). *See* 18 U.S.C. § 924(c)(1)(A), (D)(ii). His guilty plea limited his potential sentence to 30 years.

Moreover, Canfield's "actual innocence" arose only when the elements recited in the plea agreement muddied the categories. Unlike *Bousley*, where the

19

defendant did not "use" or "carry" a firearm, this is not a case of Canfield's conduct failing meet the elements of the Hobbs Act robberies alleged in the Superseding Indictment.[3] He must show he did not use or carry a firearm during and in relation to Hobbs Act robbery, which is a crime of violence, *see Mendez*, 992 F.2d at 1491, was alleged against him, and would have been prosecuted at trial absent his guilty plea. Thus, he was advised he must show "he *would not have been convicted* and/or would not have been sentenced as harshly on the 19 charges the United States dismissed pursuant to the plea agreement." Order (Doc. 293) at 5. Canfield made no attempt to show that he was not guilty of the unambiguous robbery charges alleged in the Superseding Indictment. *See* Br. in Resp. (Doc. 296), *passim*.

Canfield's § 2255 motion is procedurally defaulted. The default is not excused. The motion is barred.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

---

[3] "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). It is possible, at least theoretically, that Canfield and the United States differed over whether he committed robbery or extortion (the difference being a "razor's edge") but agreed that he violated the Hobbs Act. If that were the case, it would be easier to see that he is factually innocent of violating § 924(c), as opposed to the "legal insufficiency" of the elements in the plea agreement. As the prejudice question is easily decided, the Court will assume it is fair to say Canfield did not commit a "crime of violence" as defined in § 924(c).

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Many things about *Johnson* and § 924(c) are debatable, but the procedural bar against Canfield's § 2255 motion is not among them. Even assuming he is actually innocent of the two § 924(c) counts to which he pled guilty, he has not shown he was actually innocent of 14 other charges clearly alleging either Hobbs Act robbery or using or carrying a firearm during and in relation to Hobbs Act robbery. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED:

1. Canfield's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 288) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Canfield files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 16-88-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Canfield.

DATED this 28th day of June, 2018.

Susan P. Watters
United States District Court